2009 OK 72

**SOUTHWESTERN BELL TELEPHONE COMPANY, f/k/a, Southwestern Bell Telephone LP and SWBT Purchasing & Leasing Limited Partnership, Appellants,**

v.

**OKLAHOMA STATE BOARD OF EQUALIZATION, Appellee.**

**No. 105,905.**

Supreme Court of Oklahoma.

Sept. 29, 2009.

Rehearing Denied April 19, 2010.

William K. Elias, Elias, Books, Brown & Nelson, P.C., Oklahoma City, OK, and Eric S. Eissenstat, Fellers, Snider, Blankenship, Bailey & Tippens, P.C., Oklahoma City, OK, for Appellants.

Joe M. Hampton and Amy J. Pierce, Corbyn Hampton, PLLC, Oklahoma City, OK, for Appellee.

REIF, J.:

¶1 The issue presented for decision is whether all intangible property is exempt from taxation or just the intangible property set forth in Okla. Const. art. 10, § 6A.[1] The context in which this issue arises is the assessment of the property of Southwestern Bell Telephone Company by the State Board of Equalization for the years 2005, 2006 and 2007.[2]

¶2 Southwestern Bell's property is assessed by the Unit Method established by the Ad Valorem Division of the Oklahoma Tax Commission pursuant to 68 O.S.2001 § 2803(B). Under the Unit Method all of the property of an on-going business is considered as a whole to determine the value of the business. After the unit value of the business is determined, the value of exempt property is subtracted from the unit value. In its assessments of Southwestern Bell for 2005, 2006 and 2007, the State Board of Equalization subtracted only the value of the intangible property set forth in Okla. Const. art. 10, § 6A. Southwestern Bell protested these assessments to the Court of Tax Review, contending that all of its intangible property[3] is exempt and should either be excluded from unit valuation or the total value of its intangible property should be subtracted from the unit value. In response to the parties' cross motions for summary judgment, the Court of Tax Review rejected this contention and affirmed the assessments.

1. There are two sections numbered 6A in article 10; all references in this opinion to Okla. Const. art. 10, § 6A cite to the section 6A that makes intangible personal property exempt from ad valorem or other tax. This section states:

Intangible personal property as below defined shall not be subject to ad valorem tax or to any other tax in lieu of ad valorem tax within this State:

(a) Money and cash on hand, including currency, gold, silver, and other coin, bank drafts, certified checks, and cashier's checks.

(b) Money on deposit in any bank, trust company, or other depository of money, within or without the State of Oklahoma, including certificates of deposit.

(c) Accounts and bills receivable, including brokerage accounts, and other credits, whether secured or unsecured.

(d) Bonds, promissory notes, debentures, and all other evidences of debt, whether secured or unsecured; except notes, debentures, and other evidences of debt secured by real estate mortgages which are subject to the Mortgage Registration Tax under Sections 12351–12362, inclusive, Oklahoma Statutes, 1931 (68 O.S.1961, Sections 1171–1182).

(e) Shares of stock or other written evidence or proportional shares of beneficial interests in corporations, joint stock companies, associations, syndicates, express or business trusts, special or limited partnerships, or other business organizations.

(f) All interests in property held in trust or on deposit within or without this State, and whether or not evidenced by certificates, shares, or other written evidence of beneficial ownership.

(g) Final judgments for the payment of money.

(h) All annuities and annuity contracts.

The effective date of this Amendment shall be January 1, 1969; provided, that the intangible personal property taxes levied for the year 1968 shall be collected.

2. Southwestern Bell is a "transmission company" as defined by 68 O.S.2001 § 2808(A)(3), and as such is a "public service corporation" for purposes of ad valorem taxation. 68 O.S.2001 § 2808(A)(1). The Legislature has made "public service corporation property" a separate class of property, 68 O.S.2001 § 2803(A)(4), and directed that the property of public service corporations shall be assessed annually by the State Board of Equalization. 68 O.S.2001 § 2847(A). The Constitution generally provides that the property assessed by the State Board of Equalization shall be assessed at its fair cash value, estimated at the price it would bring at a fair and voluntary sale, but limits the assessed value to the percentage of its fair cash value at which it was assessed on January 1, 1996. Okla. Const. art. 10, § 8(A)(3). The Legislature has expressly applied these constitutional requirements to the valuation and assessment of "real and personal property of all ... public service corporations." 68 O.S.2001 § 2847(B) and (C).

3. In addition to the intangible property set forth in Okla. Const. art. 10 § 6(A), Southwestern Bell claims exemption for "intangible assets such as customer lists, customer relationships, assembled work force, databases, goodwill, employment contracts, patented technology, lease agreements, trademarks, and trade names, licensed software, an extensive advertising effort and the attendant copyrights on the advertising materials [and] technical documentation."

¶ 3 Here on appeal, Southwestern Bell basically contends that the Court of Tax Review erred by ignoring the ballot title of the "Proposal to add Art. X, § 6A," and in ruling that the text of Okla. Const. art. 10, § 6A is the only authority for the exemption of intangible property from taxation. Southwestern Bell believes that the ballot title, considered with (1) the Legislature's failure to make intangible property a classification of property, (2) the text of Okla. Const. art. 10, § 8, and (3) certain statutes governing the assessment of property, demonstrate that all intangible property is exempt from ad valorem taxation.

¶ 4 The basic premise of Southwestern Bell's position is that neither the Oklahoma Constitution nor the Oklahoma Ad Valorem Tax Code, 68 O.S.2001 §§ 2801 through 2893, currently makes intangible property a class of property subject to taxation. Southwestern Bell points out that the statute that classifies property for ad valorem taxation[4] —68 O.S.2001 § 2803—creates only five classifications (real property, personal property, personal property in the form of household goods, public service corporation property, and railroad and air carrier property) and omits intangible property in this classification scheme.

¶ 5 Southwestern Bell asserts that the Intangible Personal Property Tax Code of 1939 is the only time in state history that intangible property has been treated as a class of property subject to taxation. Southwestern

Bell points out that this Code was implicitly repealed in 1968 upon the adoption of Okla. Const. art. 10, § 6A, which exempted from taxation the very same intangible property that had been taxed under the Intangible Personal Property Tax Code. This code was expressly repealed in 1971 by Laws 1971, c. 71, § 1, emerg. eff. April 12, 1971.

¶ 6 Southwestern Bell further stresses that the people adopted Okla. Const. art. 10, § 6A under a ballot title that stated, in pertinent part, "THE GIST OF THE PROPOSITION IS ... a Constitutional Amendment prohibiting the taxation of intangible personal property." Southwestern Bell points out that the ballot title contains no limiting or qualifying language on the intangible personal property to be exempted, and reasons from this omission that the only purpose of listing the specific types of intangible property in the body of the amendment was to ensure repeal of the Intangible Personal Property Tax Code, as previously noted.

¶ 7 Southwestern Bell further asserts that the people's intent to exempt intangible property from taxation is also reflected by the amendment of Okla. Const. art. 10, § 8 in 1972.[5] In this amendment, the people provided that "real property and tangible personal property shall not be assessed for taxation at more than thirty-five (35%) of its fair market cash value." In a subsequent amendment in 1996, the people provided separate assessment limits for "real property" and "tangible personal property." [6] Southwest-

---

4. Title 68 O.S.2001 § 2803 states:
   A. The Legislature, pursuant to authority of Article X, Section 22 of the Oklahoma Constitution, hereby classifies the following types of property for purposes of ad valorem taxation:
   1. Real property;
   2. Personal property, except as provided in paragraph 3 of this subsection;
   3. Personal property which is household goods of the head of families and livestock employed in support of the family in those counties which have exempted such property pursuant to subsection (b) of Section 6 of Article X of the Oklahoma Constitution;
   4. Public service corporation property; and
   5. Railroad and air carrier property.
   B. Valuation of each class of subjects shall be made by a method appropriate for each class or any subclass thereof, as established by the Ad Valorem Division of the Oklahoma Tax Commission.

C. Classification as provided by this section shall require uniform treatment of each item within a class or any subclass as provided in Article X, Section 5 of the Oklahoma Constitution.

5. The 1972 version of Okla. Const. art. 10, § 8 (superseded eff. November 5,1996) stated in pertinent part:
   "All property which may be taxed ad valorem shall be assessed for taxation at its fair cash value, estimated at the price it would bring at a fair voluntary sale, except real property and tangible personal property shall not be assessed for taxation at more than thirty-five percent (35%) of its fair cash value, estimated at the price it would bring at a fair voluntary sale."

6. Okla. Const. art. 10, § 8, as amended in 1996, states in pertinent part:
   A. Except as otherwise provided in Article X of this Constitution, beginning January 1, 1997, all

ern Bell contends that these limits on assessing real property and tangible personal property indicate the only forms of property that the people intend to tax are real property and tangible personal property.

¶ 8 Southwestern Bell believes the Legislature has recognized and carried out the people's intent that real property and tangible personal property are the only forms of property to be taxed. Southwestern Bell points to the statutory definition of "class of subjects" and the statutory provision for local listing and assessing property. A "class of subjects" is defined to be a "category of property specifically designated pursuant to provisions of the Oklahoma Constitution for purposes of ad valorem taxation." 68 O.S. 2001 § 2802(10). Southwestern Bell notes that real property and tangible personal property are the only categories of property specifically designated by the Constitution for purposes of ad valorem taxation, while intangible personal property, as a category of property, has been specifically designated by the Constitution for exemption from taxation. As concerns the local listing and assessment of property, the Legislature has provided: "All taxable personal property, *except intangible personal property*, personal property exempt from ad valorem taxation, or household personal property, shall be listed and

assessed each year at its fair cash value, estimated at the price it would bring at a fair voluntary sale, as of January 1." 68 O.S.2001 § 2817(A) (emphasis added).

¶ 9 Finally, Southwestern Bell contends that the Legislature's constitutional power to make the property of a public service corporation (like Southwestern Bell) a separate class of property and to prescribe a special method of valuing such property (like the Unit Method) cannot nullify the exemption of intangible property otherwise provided in the Constitution. Southwestern Bell believes that the value of its exempted intangible property cannot be used to arrive at the unit value or, at the very least, must be subtracted from the unit value.

¶ 10 The issue of the exemption of intangible property for ad valorem taxation thus framed and presented is a question of law. To decide this issue, this Court must construe the Constitutional and statutory provisions that bear on the classification and exemption of property for tax purposes. Our review in this regard is de novo.

¶ 11 We begin by observing that Okla. Const. art. 10, § 6A was submitted to the people by the Oklahoma Legislature exercising its authority under Okla. Const. art. 24, § 1 to propose amendments to the Constitu-

property which may be taxed ad valorem shall be assessed for taxation as follows:
1. Tangible personal property shall not be assessed for taxation at less than ten percent (10%) nor more than fifteen percent (15%) of its fair cash value, estimated at the price it would bring at a fair voluntary sale;
2. Real property shall not be assessed for ad valorem taxation at a value less than eleven percent (11%) nor greater than thirteen and one-half percent (13.5%) of its fair cash value for the highest and best use for which such property was actually used, or was previously classified for use, during the calendar year next preceding the first day of January on which the assessment is made. The transfer of property without a change in its use classification shall not require a reassessment based exclusively upon the sale value of such property. In connection with the foregoing, the Legislature shall be empowered to enact laws defining classifications of use for the purpose of applying standards to facilitate uniform assessment procedures in this state; and
3. All other property which is assessed by the State Board of Equalization shall be assessed for

ad valorem taxation at the percentage of its fair cash value, estimated at the price it would bring at a fair voluntary sale, at which it was assessed on January 1, 1996.
B. Beginning January 1, 1997, the percentage at which real or tangible personal property is assessed within a county shall not be increased except upon approval by a majority of the registered voters of the county, voting at an election called for that purpose by a majority of the county commissioners, or upon a petition initiated by not less than ten percent (10%) of the registered voters of the county based on the total number of votes cast at the last general election for the county office receiving the highest number of votes at the election. In no event shall the percentage be increased by more than one percentage point per year or increase in excess of the limitations set forth in paragraphs 1 and 2 of subsection A of this section. The percentage at which real or tangible personal property is assessed within a county may be decreased, within the limitations set forth in paragraphs 1 and 2 of subsection A of this section, without approval of the voters of the county.

tion. In exercise of this authority, the Legislature passes a measure proposing a constitutional amendment and drafts a ballot title for the measure. 34 O.S.2001 § 9(C).[7] These are submitted to the Secretary of State who, in turn, submits them to the Attorney General to ensure they comply with applicable laws. *Id.* After receipt of the measure and the official ballot title, as certified by the Attorney General, the Secretary of State transmits "an attested copy of the measure, including the official ballot title" to the State Election Board. *Id.* In other words, constitutional amendments proposed by the Legislature consist of two substantive parts—the measure and the ballot title, both of which are submitted to the people.

¶ 12 In the case of Okla. Const. art. 10, § 6A, the measure proposing the constitutional amendment was set out in Section 1 of the authorizing Joint Resolution and the ballot title was set out in Section 2 of the Joint Resolution. Section 1 contains the text of Okla. Const. art. 10, § 6A, as it currently appears in the Constitution, specifying particular intangible personal property to be exempted. Section 2 contains the ballot title which informs the people that the gist of the measure is whether the Constitution should be amended to prohibit the taxation of intangible personal property.

█ ¶ 13 When construing a constitutional amendment that was proposed by the Legislature pursuant to Okla. Const. art. 24, § 1

and 34 O.S.2001 § 9(C), this Court will read the ballot title together with the text of the measure, even if the text of the measure contains no ambiguities or absurdities. *See Austin, Nichols & Co. v. Oklahoma County Board of Tax–Roll Corrections,* 1978 OK 65, 578 P.2d 1200. This Court will do so because those who framed and adopted the amendment considered the text of the measure and its ballot title together. The understanding of the Legislature as the framers and of the electorate as the adopters of the constitutional amendment is the best guide for determining an amendment's meaning and scope, and such understanding is reflected in the language used in the measure and the ballot title. In the case of Okla. Const. art. 10, § 6A, reading the language of the ballot title together with the language of the measure plainly reflects the intangible personal property that the electorate was "prohibiting the taxation of" by adoption of the amendment was "the intangible property as below defined" in the text of the measure.

¶ 14 While we agree with Southwestern Bell that the ballot title must be considered in construing a constitutional amendment that was proposed by the Legislature, we disagree with Southwestern Bell's interpretation of Okla. Const. art. 10, § 6A, upon consideration of the ballot title together with the text. We also disagree with Southwestern Bell's contention that intangible property has not been classified by the Legislature for purposes of taxation.

---

**7.** Title 34 O.S.2001 § 9(C) states in pertinent part:

When a measure is proposed as a constitutional amendment by the Legislature or when the Legislature proposes a statute conditioned upon approval by the people:

1. After final passage of a measure, the Secretary of State shall submit the proposed ballot title to the Attorney General for review as to legal correctness. Within five (5) business days, the Attorney General shall, in writing, notify the Secretary of State, the President Pro Tempore of the Senate and the Speaker of the House of Representatives whether or not the proposed ballot title complies with applicable laws. The Attorney General shall state with specificity any and all defects found and, if necessary, within ten (10) business days of determining that the proposed ballot title is defective, prepare a prelimi-

nary ballot title which complies with the law and furnish a copy of such ballot title to the Secretary of State, the President Pro Tempore of the Senate and the Speaker of the House of Representatives. The Attorney General may consider any comments made by the President Pro Tempore of the Senate or the Speaker of the House of Representatives and shall file a final ballot title with the Secretary of State no sooner than ten (10) business days and no later than fifteen (15) business days after furnishing the preliminary ballot title; and

2. After receipt of the measure and the official ballot title, as certified by the Attorney General, the Secretary of State shall within five (5) days transmit to the Secretary of the State Election Board an attested copy of the measure, including the official ballot title.

¶ 15 As previously noted, the Legislature has classified five types of property for purposes of ad valorem taxation. The Legislature has made "personal property" a separate class. 68 O.S.2001 § 2803(A)(2). The only personal property that the Legislature excepted from this class was the personal property set forth in paragraph 3 of § 2803(A). This includes "household goods of the head of families and livestock employed in support of the family in those counties which have exempted such property pursuant to subsection (b) of Section 6 of Article X of the Oklahoma Constitution."

¶ 16 In addition to this single exception, the Legislature defined personal property, for purposes of ad valorem taxation, to include 12 categories of tangible things and "[a]ll other property, having an actual, constructive or taxable situs in this state, and not included in the definition of real property." 68 O.S.2001 § 2807. This is consistent with the general definition of personal property—"Every kind of property that is not real property is personal." 60 O.S.2001 § 9. *Black's Law Dictionary* 1096 (5th ed. 1979), states: "The term 'personal property' in its broadest legal signification includes everything the subject of ownership not being land or any interest in land, [such] as goods, chattels, money, notes, bonds, stocks and choses in action generally, *including intangible property*." (Emphasis added.)

¶ 17 More importantly, use of the term "intangible personal property" in Okla. Const. art. 10, § 6A indicates that the both Legislature and people of this state regard intangible property to be a species of personal property. When Okla. Const. art. 10, § 6A and 68 O.S.2001 § 2807(13), are read with the statutory declaration that "[a]ll property in this state, whether real or personal, except that which is specifically exempt by law ... shall be subject to ad valorem taxation," it is readily apparent that the Legislature has included intangible property not exempt by Okla. Const. art. 10, § 6A, in the classification of personal property.

¶ 18 Furthermore, the assessment limits prescribed for "real property" and "tangible personal property" by Okla. Const. art. 10, § 8 are not restrictions on the types, categories or classifications of property that are subject to ad valorem taxation, nor do they provide exemptions of any property that is not real property and tangible personal property. The assessment limit prescribed for tangible personal property simply treats tangible personal property as a "subclass" of personal property. The Legislature has recognized that its classifications of property can have subclasses, either prescribed by the Legislature or by the Constitution, and in such cases, all subjects in each class or any subclass thereof shall be valued by a method appropriate for the class or subclass, and each item within a class or any subclass shall receive uniform treatment. 68 O.S.2001 § 2803(B) and (C).

¶ 19 Finally, by defining "class of subjects" to mean "a category of property specifically designated pursuant to provisions of the Oklahoma Constitution for purposes of ad valorem taxation," the Legislature was not restricting its constitutional power under Okla. Const. art. 10, § 22 to specifically designate a category of property for ad valorem tax purposes; instead, it was acknowledging that the Constitution can also designate categories of property for treatment as a class or subclass, and provide a method for the assessment of such classes or subclasses, as in the case of Okla. Const. art. 10, § 8. The Constitution does not purport to be the only authority for designating classes of property and, in fact, expressly provides to the contrary: "Nothing in this Constitution shall be held, or construed, to prevent the classification of property for purposes of taxation." Okla. Const. art. 10, § 22.

¶ 20 Similarly, the Legislature did not regard all intangible property to be exempted by Okla. Const. art. 10, § 6A simply by excluding intangible personal property from local listing and assessment in 68 O.S.2001 § 2817(A). In light of what has been said in the foregoing pages of this opinion, it is readily apparent that the Legislature was excluding intangible property that was exempted by Okla. Const. art. 10, § 6A from

local listing and assessment, not *all* intangible property. Even if the Legislature intended this statute as an indirect way to exempt intangible property not covered by Okla. Const. art. 10, § 6A, the statute would be void to that extent. The Constitution expressly prohibits the Legislature from passing any law exempting any property within this State from taxation, except as otherwise provided in the Constitution. Okla. Const. art. 5, § 50. Contrary to the suggestion of Southwestern Bell, local assessment does not treat intangible property in terms of exemption any differently than central assessment by the State Board of Equalization.

¶ 21 It is well settled that the burden of proving entitlement to an exemption is on the individual seeking the exemption, and constitutional provisions are strictly construed against those claiming exemption. *Austin, Nichols & Co.*, 1978 OK 65, ¶ 19, 578 P.2d at 1203–04. Despite a thoughtful analysis and cogent argument, Southwestern Bell has failed in its burden to demonstrate that it is entitled to an exemption for its intangible property, other than the intangible personal property specifically exempted by Okla. Const. art. 10, § 6A. Southwestern Bell has likewise failed to persuade this Court that the State Board of Equalization is limited to considering only real property and tangible personal property in assessing a public service corporation's property under the Unit Method. Intangible property not exempted by the Constitution is taxable and properly considered under the Unit Method. *In re Oklahoma Gas & Electric Co.*, 1918 OK 80, 171 P. 26.[8] Furthermore, subtracting the value of exempt intangible property from the unit value gives public service corporations the full benefit of the exemption of such property. Accordingly, the Court of Tax Review did not err in denying Southwestern Bell's claim of exemption and in affirming the assessment of Southwestern Bell's public service corporation property for the years 2005, 2006 and 2007. The Court of Tax Review is **AFFIRMED.**

¶ 22 EDMONDSON, C.J., HARGRAVE, OPALA, KAUGER, WATT, WINCHESTER, COLBERT, and REIF, JJ., concur.

¶ 23 TAYLOR, V.C.J., not participating.

---

**8.** Title 68 O.S.2001 § 2848(A) (emphasis and bold added) states:

Every railroad, air carrier and *public service corporation* organized, existing, or doing business in this state, *shall,* on or before April 15 of each year, *return sworn lists* or schedules *of its taxable property* to the Oklahoma Tax Commission as provided by law, or as may be required by the Commission; and such property shall be listed *with reference to the amount, kind, and value* as of the first day of January of the year in which it is listed; and *said property shall be subject to taxation for county, municipal, public school and other purposes to the same extent as the real and personal property of individuals.*

Title 68 O.S.2001 § 2850 (emphasis and bold added) states:

Every *transmission company* doing business in this state *shall return sworn lists* or schedules *of its taxable property to the Oklahoma Tax Commission, and such lists* or schedules *shall* show the total length of line in each county, school district or other subdivision of the state, total number of wires to each line and total number of poles per mile, the total number of instruments in each municipal subdivision, the total amount of office furniture and the total amount of tools, and material, the total amount of *other property,* and the location thereof.