KINGFISHER WIND v. WEHMULLER
2022 OK 83
Case Number: 119837
Decided: 10/18/2022
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2022 OK 83, __ P.3d __

 
NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

 

 

KINGFISHER WIND, LLC., Plaintiff/Appellee,
v.
MATT WEHMULLER, CANADIAN COUNTY ASSESSOR, and CAROLYN MULHERIN, KINGFISHER COUNTY ASSESSOR, Defendants/Appellants.

APPEAL FROM THE DISTRICT COURT OF CANADIAN COUNTY

Honorable Jack D. McCurdy II, Trial Judge

¶0 The plaintiff, Kingfisher Wind, LLC., (Kingfisher Wind) is located partially in Canadian and Kingfisher Counties. After county assessors from each county valued its wind farm for ad valorem tax assessment, Kingfisher Wind appealed the valuation to the District Courts in each county. By agreement, the cases were consolidated in Canadian County, and the cause proceeded to trial with the primary issue being whether Production Tax Credits (PTCs) are "property" subject to ad valorem taxation. The trial court held that PTCs were not taxable, and it excluded their value from taxable valuation. The County Assessors appealed, and we retained the cause. We hold that PTCs are intangible personal property, and not subject to ad valorem taxation pursuant to the Okla. Const. art 10, §6A. Because the trial court's findings regarding valuation were not otherwise against the weight of the evidence, we affirm the trial court.

TRIAL COURT AFFIRMED.

William K. Elias, Jay Dobson, Brittany N. Dowd, Oklahoma City, Oklahoma, for Appellee.

Mart Tisdal, Luke Adams, Clinton, Oklahoma,

Mike Fields, Canadian County District Attorney, El Reno, Oklahoma,

Pat O'Hara, Patrick O'Hara, Jr. W. Jason Hartwig, Oklahoma City, Oklahoma, for Appellants.

David A. Elder, Matthew W. Brockman, Katherine R. Colclazier, Oklahoma City, Oklahoma, for Amici Curiae, Arbuckle Mountain Wind Farm, L.L.C., et al.

KAUGER, J.:

¶1 We retained this cause to resolve the first impression question of whether Production Tax Credits (PTCs) utilized to finance the building of a wind farm are "property" which can be used to determine the fair cash value of the wind farm for ad valorem taxation purposes.. Because the trial court's findings regarding valuation were not otherwise against the weight of the evidence, we affirm the trial court.

FACTS

¶2 In 2015, the plaintiff/appellee, Kingfisher Wind, L.L.C. (Kingfisher Wind) began construction of a wind farm, which included one hundred forty-nine wind turbine generators, electrical equipment, a maintenance facility, substation, and transmission lines. One hundred of the turbine generators are located in Kingfisher County, Oklahoma, and forty-nine are located in Canadian County, Oklahoma. For 2016 ad valorem tax purposes,

¶3 Kingfisher Wind filed a formal protest of the valuation with the Canadian County Board of Equalization.

¶4 On August 8, 2016, Kingfisher Wind filed an appeal in the District Court of Canadian County, seeking trial de novo to correct the cash value of the property.

¶5 Kingfisher Wind also filed a protest with the Kingfisher County Board of Equalization and the Kingfisher Assessor presented an adjusted/altered cash value of $275,839,357.00 which the Kingfisher County Board accepted. Thus, the total fair cash value in both counties together was $458,003,507.00. Kingfisher Wind filed an appeal on August 8, 2016, in the District Court of Kingfisher County, seeking a trial de novo, asserting that the actual fair cash value was $169,331,000.00 or less.

¶6 On September 21, 2018, the Kingfisher Assessor and Kingfisher Wind jointly requested that the Kingfisher case be consolidated with the Canadian County case in the Canadian County District Court. The District Court of Kingfisher County issued an order on September 24, 2018, transferring the cause to Canadian County for purposes of consolidation and the causes were consolidated on October 12, 2018, by the District Court of Canadian County.

¶7 On April 26, 2019, Kingfisher Wind filed a Motion for Partial Summary Judgment in the now consolidated Canadian County case. It sought to have Production Tax Credits (PTCs) and certain contracts determined to be exempt from ad valorem taxation. PTCs are a federal tax equity financing concept which allowed Kingfisher Wind to finance the building of their facilities in exchange for a tax credit directly related to the kilowatt hour of electricity generated.

¶8 PTCs are not real estate/real property, although they may be, as argued by the assessors, intrinsically tied to real estate because wind farms would likely not be built without them. Kingfisher Wind relied on:

1) The Okla. Const. art. 10 §6A which provides that "[b]eginning January 1, 2013, intangible personal property shall not be subject to ad valorem tax or to any other tax in lieu of ad valorem tax within this State;" and

2) Stillwater Housing Associates v. Rose, 2011 OK CIV APP 51254 P.3d 726

The parties also disputed whether certain expert testimony, documents and depositions could be considered at trial. Each side presented expert witnesses' reports with differing methods of evaluation to determine the fair cash value of the subject property. Kingfisher Wind's experts excluded the PTC's in their valuation of the property, but the County Assessors did not.

¶9 After a hearing, the trial court filed a memorandum opinion on July 26, 2019, in which it found that Stillwater Housing, supra, was unpersuasive, and an improper application of the law. Consequently, the trial court held that PTCs were subject to ad valorem taxation. Regarding the contracts which Kingfisher Wind sought as exempt from taxation, the trial court said that "[t]he Defendants conceded at the hearing that the contracts, as outlined by the Plaintiff in its brief, were in fact exempt under Oklahoma law and the Court affirms that finding and sustains that part of Plaintiff's Motion for Partial Summary Judgment." The trial court also denied Kingfisher Wind's motion regarding expert testimony and exclusion of documents and depositions.

¶10 On October 28, 2019, Kingfisher Wind filed for leave of court to file another Motion for Summary Judgment. This time it sought a clarification by the trial court as to whether it had determined that the PTCs were taxable because they were income, but not intangible personal property, or because PTCs were actually tangible personal property. On November 22, 2019, the trial court granted Kingfisher Wind's request to file another Motion for Summary Judgment.

¶11 On March 6, 2020, the trial court issued another memorandum opinion in which it determined that the PTCs are not really property of any kind ---intangible or tangible. Rather, it said PTCs are incidental benefits received by investors as a result of their participation in an investment made in the future production of the wind farm that should not be treated as property. Nevertheless, it left open the issue of the "value" of PTCs to be used for taxation purposes as a matter for trial.

¶12 The trial court held a non-jury trial on April 12-14, 2021, to determine the overall fair market value of Kingfisher Wind for tax assessment purposes. On August 5, 2021, the trial court filed an order, reflecting its ruling in the non-jury trial. It ruled that:

1) the PTCs were contracted out by Kingfisher Wind to a third party prior to construction of the wind farm;

2) because the PTCs were contracted out to finance construction, coupled with the fact that the experts in this cause lacked a convincing explanation as to how to treat the PTCs, the PTCs were not taxable, and were not particularly part of any value in this cause; and

3) the Kingfisher Wind farm was valued at $175,000,000 for taxation purposes with 39.78% attributable to Canadian County and 60.22% to Kingfisher County (which translated to $69,615,000 taxable value for Canadian County and $105,385,000 for Kingfisher County).

¶13 On September 7, 2021, the County Assessors appealed, and filed a motion to retain the appeal in this Court. We granted the motion and retained the cause on October 6, 2021. On April 18, 2022, fifteen wind farm limited liability companies filed a request to file an amicus curaie brief in this cause. We granted the request on May 3, 2022, and they filed the amicus curiae brief on May 31, 2022.

PRODUCTION TAX CREDITS ARE INTANGIBLE PERSONAL
PROPERTY EXEMPT FROM AD VALOREM TAXATION UNDER THE 
OKLA. CONST. ART. 10 §6A. 

¶14 The commissioners label PTCs as tangible personal property subject to taxation. The gravamen of their argument is that the PTCS are of such an economic benefit to owning, operating, and determining the full fair cash value of the wind farm and its real property, they must be included to determine a fair and accurate taxable ad valorem valuation of the wind farm. Kingfisher Wind argues that PTCs are intangible personal property and are precluded from taxation by the Okla. Const. art 10, §6A.

a. Standard of Review

¶15 When an ad valorem tax appeal is taken to a district court, the proceeding is governed by equitable principles and the district court's review is de novo.de novo.

b. Exempted Intangible Personal Property and the PTCs.

¶16 All real and personal property in this State is generally subject to ad valorem taxation at a percentage of its fair cash value,

¶17 In Southwestern Bell Telephone Co. v. Okla. State. Bd. of Equalization, 2009 OK 72231 P.3d 638Southwestern Bell, supra, Southwestern Bell, in addition to the intangible property listed by the Constitution, sought exemption for other intangible items such as customer lists, customer relations, assembled work force, databases, goodwill, employment contracts, patented technology, lease agreements, trademarks, and trade names, licensed software, extensive advertising and the attendant copyrights on advertising and technical documentation. We held that only the specific intangible property items listed by the Constitution were exempt from taxation. Consequently, any other intangible property not exempted by the Constitution was taxable.

¶18 In response to our constitutional interpretation in Southwestern Bell, supra, the voters passed State Question 766 in November of 2012. It amended the Okla. Const., art. 10, §6A to omit the specific list of intangible personal property exempt from taxation and simply stated that:

Beginning January 1, 2013, intangible personal property shall not be subject to ad valorem tax or to any other tax in lieu of ad valorem tax within this State.

We have not previously addressed what this amendment meant, but without defining what would be considered "intangible personal property," the amendment requires all intangible personal property to be exempt from taxation. Accordingly, the question is whether PTCs are intangible personal property exempt from ad valorem taxation.

¶19 The constitutional text does not define the term "intangible personal property. The Ad Valorem Tax Code, 68 O.S. 2011 §§2801et seq. does not define either tangible or intangible property. "Tangible personal property" is defined by statute, for the limited application of the Sales Tax Code, as "personal property that may be seen, weighed, measured, felt, or touched or that is any manner perceptible to the senses.

¶20 In Globe Life and Accident Ins. Co., v. Okla. Tax Com'n, 1996 OK 39913 P.2d 1322

¶21 In Globe Life, supra, we said:

¶9 At common law "tangible personal property" refers to rights in tangible physical things of the world over which possession may be taken. "Intangible personal property" encompasses property rights which - though represented by tangible objects (e.g., stock certificates, bonds and notes) - are essentially incorporeal in that they have limited intrinsic value and ultimately can only be claimed or enforced by a legal action. At common law things which are incorporated in the manufacturing process are subsumed into the end product and are classified as either tangible or intangible personal property according to the product's final use or disposition. There is no common-law notion of mixed personal property - i.e., personalty that is part intangible, part tangible. (Emphasis supplied, footnotes omitted.)

Regarding rules for construing tax statutes we said:

¶10 Tax statutes are penal in nature. Where there is reasonable doubt about the taxing act's meaning, all ambiguity must be resolved in favor of the taxpayer. Legislative intention - ascertained from a general consideration of the entire act - must be given effect. Nonetheless, courts cannot enlarge the taxing act's ambit to make its provisions applicable to cases not clearly within the Legislature's contemplation or to fill lacunae in the revenue law in a manner that would distort the enactment's plain language. (Footnotes omitted.)

¶22 While we determined in Globe Life, supra, that magnetic tapes had aspects of both tangible and intangible property, we noted the existence of a gap in the law. The Sales Tax Code defined magnetic tapes' contents, but the Use Tax Code did not. We said "the proper remedy for the OTC [Oklahoma Tax Commission] is not to have the courts expand the Use Tax Code's scope to include intangible personal property, but rather to press for the gaps closure by the Legislature." Accordingly, because the tapes had aspects of both tangible and intangible personal property, we concluded that they must be treated as intangible property, and that they were outside of the Use Code's ambit and were not subject to a tax levy.

¶23 We are faced with a similar gap in this cause. If the Legislature had wished to statutorily define PTCs as tangible property, it could have done so, but it has not done so yet. We have no doubt that PTCs have a direct impact on a property's fair market value, and that ad valorem tax assessments must be based on fair market value. PTCs, however, are not a tangible physical thing like real estate. Instead, they are incorporeal property in that they have limited intrinsic value, and ultimately can only be claimed or enforced by a legal action, much like goodwill,

¶24 Given the rationale of Globe Life, supra, as well as the fact that the Constitution was changed after our decision in Southwestern Bell, supra, to exclude all intangible property from taxation, we must conclude that PTCs are to be treated as intangible property, even if they have qualities of both tangible and intangible property. We recognize that this creates a conflict for taxing authorities to both assess a "fair market value," and to exclude PTCs from consideration. However, PTCs are simply not subject to ad valorem taxation under Oklahoma law at this time.

¶25 Our sister states are divided on whether to include tax credits in tax assessments. However, these cases have limited value to this cause because they have often been decided on constitutional and statutory provisions incompatible with our own state's provisions. Nevertheless, we note them because they generally further explain how other courts have treated and considered such tax credits.

¶26 Some states, like Tennessee and South Dakota have no constitutional or statutory exemption for taxation of intangible personal property.

¶27 In 2003, an Arizona Tax Court took an approach opposite from Michigan when it determined that tax credits were intangible personal property, and that they could not be considered in making real estate tax assessments of the taxpayer's property.

¶28 Georgia courts allowed tax credits to be considered in fair market value for tax assessment, but statutory amendments later expressly excluded tax credits from consideration.

¶29 We have no doubt that tax credits are intertwined with real estate, and that they may enhance the value of real property or may have a value for IRS income tax purposes. Nevertheless, under the plain and ordinary language of the Okla. Const. art. 10, §6A, intangible personal property is not taxable and PTCs are intangible personal property. The Legislature has not chosen to define PTCs so as to allow them to be taxable as part of a real property tax assessment. Until it does so, they are not subject to taxation. Furthermore, we have reviewed the evidence, and the trial court's findings as to the valuation of the properties were not against the weight of the evidence. Consequently we affirm the trial court.

CONCLUSION

¶30 The Okla. Const. art. 10 §6A provides that "[b]eginning January 1, 2013, intangible personal property shall not be subject to ad valorem tax or to any other tax in lieu of ad valorem tax within this State." "Tangible personal property" refers to rights in tangible physical things of the world over which possession may be taken. "Intangible personal property" encompasses property rights which - though represented by tangible objects (e.g., stock certificates, bonds and notes) - are essentially incorporeal in that they have limited intrinsic value and ultimately can only be claimed or enforced by a legal action.

¶31 PTCs are intangible personal property exempt from ad valorem taxation -- even if they have both tangible and intangible aspects. The trial court properly excluded PTCs from valuation for ad valorem taxation. Because the trial court's findings regarding valuation were not otherwise against the weight of the evidence, we affirm the trial court.

TRIAL COURT AFFIRMED.

ALL JUSTICES CONCUR.

FOOTNOTES

Beginning January 1, 2013, intangible personal property shall not be subject to ad valorem tax or to any other tax in lieu of ad valorem tax within this State.

68 O.S. 2011 §2801

Articles 28, 29, 30 and 31 of Title 68 of the Oklahoma Statutes shall be known and may be cited as the Ad Valorem Tax Code.

Title 68 O.S. 2011 §2804

All property in this state, whether real or personal, except that which is specifically exempt by law, and except that which is relieved of ad valorem taxation by reason of the payment of an in lieu tax, shall be subject to ad valorem taxation.

68 O.S. 2011 §2819

Taxable values of real and personal property shall be established in accordance with the requirements of Sections 8, 8B and 8C of Article X of the Oklahoma Constitution. The county assessor shall determine the taxable value of all taxable property that the assessor is required by law to assess and value and shall determine such taxable value in accordance with the requirements of Sections 8, 8B and 8C of Article X of the Oklahoma Constitution.

68 O.S. Supp 2015 §2876

68 O.S. Supp. 2015 §2880.1

A. Both the taxpayer and the county assessor shall have the right of appeal from any order of the county board of equalization to the district court of the same county, and right of appeal of either may be either upon questions of law or fact including value, or upon both questions of law and fact. In case of appeal the trial in the district court shall be de novo. Provided, the county assessor shall not be permitted to appeal an order of the county board of equalization upon a question of the constitutionality of a law upon which the board based its order, but the county assessor is hereby authorized in such instance to request a declaratory judgment to be rendered by the district court. . . .

The statute was amended in 2019, and 2022 to be effective on January 1, 2023.

68 O.S. Supp. 2015 §2880.1

Southwestern Bell Telephone Co., v. Okla. State Bd. of Equalization, 2009 OK 72231 P.3d 638Austin, Nichols & Co., 1978 OK 65578 P.2d 1200

In the Matter of the Assessment of Personal Property Taxes Against Missouri Gas Energy, 2008 OK 84

In the Matter of the Assessment of Personal Property Taxes Against Missouri Gas Energy, see note 13, supra; Ellington v. Horwitz Enterprises, 2003 OK 3768 P.3d 983

68 O.S. 2011 §2804

All property in this state, whether real or personal, except that which is specifically exempt by law, and except that which is relieved of ad valorem taxation by reason of the payment of an in lieu tax, shall be subject to ad valorem taxation.

68 O.S. 2011 §2801

19. "Fair cash value" or "market value" means the value or price at which a willing buyer would purchase property and a willing seller would sell property if both parties are knowledgeable about the property and its uses and if neither party is under any undue pressure to buy or sell and for real property shall mean the value for the highest and best use for which such property was actually used, or was previously classified for use, during the calendar year next preceding the applicable January 1 assessment date;

Section 2802 has been amended several times since its enactment in 1968, but the current definition of fair cash value which became effective in 2021, has essentially remained the same. Furthermore, §2817 provides in pertinent part:

H. When the term "fair cash value" or the language "fair cash value, estimated at the price it would bring at a fair voluntary sale" is used in the Ad Valorem Tax Code, in connection with and in relation to the assessment of real property, it is defined to mean and shall be given the meaning ascribed and assigned to it in this section and when the term or language is used in the Code in connection with the assessment of personal property it shall be given its ordinary or literal meaning.

68 O.S. 2011 §2803

68 O.S. 2011 §2806

68 O.S. Supp. 2015 §2807

68 O.S. Supp. 2015 §2807

. . .13. All other property, having an actual, constructive or taxable situs in this state, and not included within the definition of real property.

Intangible personal property as below defined shall not be subject to ad valorem tax or to any other tax in lieu of ad valorem tax within this State:

(a) Money and cash on hand, including currency, gold, silver, and other coin, bank drafts, certified checks, and cashier's checks.

(b) Money on deposit in any bank, trust company, or other depository of money, within or without the State of Oklahoma, including certificates of deposit.

(c) Accounts and bills receivable, including brokerage accounts, and other credits, whether secured or unsecured.

(d) Bonds, promissory notes, debentures, and all other evidences of debt whether secured or unsecured; except notes, debentures, and other evidences of debt secured by real estate mortgages which are subject to the Mortgage Registration Tax under Sections 12351 - 12362, inclusive, Oklahoma Statutes, 1931 (68 O.S. 1961, Sections 1171 - 1182).

(e) Shares of stock or other written evidence or proportional shares of beneficial interests in corporations, joint stock companies, associations, syndicates, express or business trusts, special or limited partnerships, or other business organizations.

(f) All interests in property held in trust or on deposit within or without this State, and whether or not evidenced by certificates, shares, or other written evidence of beneficial ownership.

(g) Final judgments for the payment of money.

(h) All annuities and annuity contracts.

The effective date of this Amendment shall be January 1, 1969; provided, that the intangible personal property taxes levied for the year 1968 shall be collected. There is also a second art 10, §6a dealing with dealing with tangible personal property moving through the state which is not at issue here.

68 O.S. Supp. 2016 §1352

. . . 24. "Tangible personal property" means personal property that can be seen, weighed, measured, felt, or touched or that is in any other manner perceptible to the senses. "Tangible personal property" includes electricity, water, gas, steam and prewritten computer software. This definition shall be applicable only for purposes of the Oklahoma Sales Tax Code; . . .

68 O.S. 1991 §§1401

68 O.S. 1991 §§1301

In the Matter of Protest of Hare, 2017 OK 60398 P.3d 317In the Matter of the Assessment of Personal Property Taxes Against Missouri Gas Energy, see note 13, supra. In the context of sales tax, the Court determined the a fuel oil transaction was tangible personal property in Koch Fuels, Inc., v. State of Okla. ex rel. Okla. Tax Com'n, 1993 OK 140862 P.2d 471In the Matter of Sales Tax Protest of West v. State of Okla. ex rel. Okla. Tax Com'n, 1999 OK CIV APP 24979 P.2d 263

Inclusion of Intangible Asset Values in Tangible Property Tax Assessments, 90 A.L.R. 5th 547, (2001).

Town Square Ltd. Partnership v. Clay County Board of Equalization, 2005 S.D. 99, ¶19, 704 N.W.2d 896 (2005) (South Dakota makes no distinction between tangible and intangible property, so whether tax credits are intangible personal property is irrelevant. Tax credits are included because they can be transferred to purchasers and they enhance the value of the property in the marketplace.); Spring Hill, L.P., v. Tennessee State Board of Equalization, 2003 WL 23099679 (Tenn. Ct. App. 2003) (Tennessee makes a statutory distinction between real property, tangible personal property, and intangible personal property, but all classifications are taxed. Tax credits relate directly to the real property and are not an intangible benefit severable from it. They must be included in tax assessments because the purpose of a valuation is to determine the fair cash value, based upon the willing buyer-willing seller concept and incoming producing capacity. Ignoring tax credits would distort the earning capacity and value of the property.) Both of these cases involve the use of the LIHTC program created as part of the Federal Tax Reform Act of 986, and they utilize the IRS Code to provide an incentive for the construction and rehabilitation of low-income rental housing.

Huron Ridge L.P., v. Ypsilanti Township, 737 N.W.2d 187 (Mich. App. 2007) (The appraised value of the property would be artificially depressed if the value of the tax credits were not included. If the tax credits are intertwined with the business, rather than the real property they would not be taxable.). See also, In the Matter of Ottawa Housing Assoc., L.P., 10 P.3d 777, 780 (Kan. App. 2000)(Recognizing that any restrictions on low income housing contract should be considered for ad valorem taxation.); In the Matter of Appeal of Greens of Pine Glen LTD., 576 S.E.2d 316, 322 (N.C. 2003) (Tax payer may not artificially alter the value of its property by applying such things as tax credits.); Pedcor Investments v. State Bd., 715 N.E.2d 432, 437 (Tax Ct. Indiana 1999) (Commissioners properly considered federal tax incentive providing benefits to property owners.).

City of Chicago v. Michigan Beach Housing Cooperative, 242 Ill. ApP.3d 636, 609 N.E.2d 877, 885-887 (1993), the Illinois Appellate Court for the First District held that tax credits could not serve as collateral because they were not generally intangible personal property. They had no independent value because they were merely an incidental benefit to investing. In Rainbow Apartments v. Illinois Property Tax Appeal Board, 326 Ill. App.3d 1105, 260 Ill. Dec. 875, 762 N.E.2d 534, 537 (201), the Illinois Appellate Court for the Fourth District held that tax credits were not intangible property sold and existing apart from the real estate cause they have no independent value. They may be included in the property's fair cash value. Brandon Bay, Ltd. Partnership v. Payette County, 132 P.3d 428 (Tax credits were rights and privileges belonging to the real estate, as opposed to contract rights, and thus were properly considered in assessing value.).

Apparently Alaska has not decided the issue. When confronted with it in Horan v. Kenai Peninsula Borough Board of Equalization, 237 P.3d 990, 999 (2011), the Supreme Court of Alaska remanded the matter back to the Board of Equalization so that the Board could clarify its treatment of tax credits in a valuation of a low-income housing apartment complex.

Parkside Townhomes Assoc. v. Bd. Of Assessment Appeals of York County, 711 A.2d 607, 610-11 (Commonwealth Ct. Penn. 1998).

Cottonwood Affordable Housing v. Yavapai County, 205 Ariz. 427, 72 P.3d 357 (Tax Ct. Ariz. 2003).

Siete Solar, L.L.C. v. Arizona Department of Revenue, 2015 WL 8620672 (Ct. App. Ariz.. 2015) (Determining that the statutory amendment actually changed the law. Prior to the amendment the Arizona Department of Revenue taxed the cost of the renewable energy equipment without lessening the costs by tax credits or cash grants the taxpayer received. However, this practice did not result in taxation of those incentives, but merely resulted in taxation on the cost originally expended on the equipment.).

Pine Pointe Housing, L.P. v. Lowndes County Bd of Tax Assessors, 561 S.E.2d 860 (Ga. Ct. App. 2002) discussing allowing tax credits in order to consider fair market value of property but recognizing statutory change which prohibited consideration was not retroactive.

Baybridge Associates Ltd. Partnership v. Dept. of Revenue, 892 P.2d 1002, 107 (Or. 1995).

Maryville Properties L.P. v. Nelson, 83 S.W. 3d 608, 617 (Mo. App. W.D. 2002); Cascade Court Ltd. Partnership v. Noble, 20 P.3d 997, 1002 (Wash. App. Div. 1 2001); Woda Ivy Glen Ltd. Partnership v. Fayette County Bd. of Revision, 2009 Ohio 762, ¶29, fn. 4, 902 N.E.2d 984, 992).

Globe Life and Accident Ins. Co., v. Okla. Tax Com'n, 1996 OK 39913 P.2d 1322